IN THE UNITED STATES COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| GRETCHEN LAUREANO QUIÑONES,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD NADAL CARRION<br><br>Defendant. | CIV. NO.: 15-2548 (SCC) |

**OPINION AND ORDER**

Plaintiff Gretchen Laureano Quiñones engaged the services of Doctor Richard Nadal Carrión to perform an abdominoplasty. Ms. Laureano was not pleased with the results. She sued the doctor for medical malpractice, seeking compensatory damages.

Plaintiff moved for summary judgment. Docket No. 93. She alleges that Dr. Nadal performed "a different operation," one for which he did not obtain informed consent; that the doctor deviated from the standard of care in performing the

abdominoplasty; and that he incurred in patient abandonment. Docket No. 93-7 at pgs. 4 and 6.

Defendant opposed, Docket No 114, alleging that the motion for summary judgment is based on conclusory allegations; that the motion and accompanying statement of facts do not comply with Fed. R. Civ. P. 56(c) and Local Rule 56; and that Dr. Nadal did not sever the physician/patient relationship so as to effectively abandon Ms. Laureano. Docket No. 114.

## II. Standard

Summary judgment may be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)(If a party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial," summary judgment is proper.) The court must examine the record in the light most favorable to the nonmovant and indulging all reasonable inferences in the nonmovant's favor. *Maldonado-Denis v. Castillo-Rodríguez*, 23 F.3d 576, 581 (1st Cir. 1994).

In its review of the record, the court must refrain from engaging in an assessment of credibility or weigh the evidence presented. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 135 (2000)("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves*, 530 U.S. at 150 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–251 (1986)).

### III. Factual Findings

In accordance with Local Rule 56(b), "[a] motion for summary judgment shall be supported by a separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact to be tried. Each fact asserted

in the statement shall be supported by a record citation as required by subsection (e) of this rule."

Most of Ms. Laureano's proffered facts are not supported by a record citation. Out of the 97 "proposed facts" contained in Ms. Laureano's Statement of Uncontested Facts, ("SUF"), only 39 contain a reference to a record citation. And out of those 39 "proposed facts," a significant number make reference to exhibits that are either not authenticated—such as exhibits 3 and 4, at Docket No. 93-2—or that do not support the purported fact. Several other proposed facts are based on inadmissible hearsay, or are immaterial to the controversy before us.

Therefore, after crediting only material facts properly supported by accurate record citations, as required by Local Rule 56(e), the Court makes the following findings of uncontested facts:

1. Ms. Laureano approached Dr. Nadal to inquire about the cost of an abdominoplasty and breast augmentation operation.

2.  After examining her, Dr. Nadal quoted $9,040.00 for both procedures. *See* Docket No. 93-2 at pg. 1.

3.  Ms. Laureano signed a consent form on June 26, 2012. *See* Docket No. 93-2 at pg. 3.

4.  The operation was performed on June 29, 2012.[1]

5.  The operation took place without complications.[2]

6.  On April 30, 2013, Ms. Laureano visited a psychiatrist who certified that she did not have a history of body dysmorphic disorder. Docket No. 93-2 at pg. 15.

7.  Dr. Nadal agreed to perform a revision of her surgery.[3]

8.  On May 23, 2017, plaintiff was given three sets of consent forms for the revision surgery.[4]

9.  Ms. Laureano signed the American Society of Plastic Surgeons consent form relating to the cosmetic scar revision and re-positioning procedure to be performed by Dr. Nadal on June 5, 2013, and the Doctor's Hospital

---

1 The parties agree to this fact.
2 The parties agree to this fact.
3 The parties agree to this fact.
4 The parties agree to this fact.

consent form for the procedure.

10. On May 23, 2013, Ms. Laureano was given several forms that were required in order to proceed with the scar revision and re-positioning surgery scheduled for June 5, 2013.

11.  Ms. Laureano refused to sign one of the documents provided as part of the pre-admission process. *See* Exhibit 9, Docket No. 93-2, at pg. 18.

12. The surgery scheduled for June 5, 2013, never took place.

13. On June 11, 2013, Ms. Laureano visited attorney Jesús A. Santiago Rosario. Mr. Santiago sent a letter to Dr. Nadal. *See* Exhibit 12, Docket No. 93-3, at pg. 5.

14. SIMED, the Defendant's Insurance Company, denied the extra judicial claim.

**IV. Analysis**

**(i)  Deviation from the Standard of Care**

Ms. Laureano avers that summary judgment should be entered regarding Dr. Nadal's deviation from the accepted

standard of care for an abdominoplasty. Ms. Laureano, however, has not proffered evidence regarding what the standard of care is, and certainly has not established a lack of contested facts regarding Dr. Nadal's alleged deviation. The record is devoid of any evidence upon which the Court could reasonably conclude that summary judgment is proper. Hence, Ms. Laureano's request for summary judgment on this issue is denied.

### (ii) Lack of Informed Consent

It is undisputed that Ms. Laureano signed the consent form for the original operation, i.e., the breast augmentation and abdominoplasty. Yet she argues that Dr. Nadal did not obtain her informed consent because he failed to tell her "that she could obtain bad results, ending with the appearance of two belly buttons." *See* Docket No. 93-7 at pg. 3. Her lack of informed consent claim thus rests on the doctor's alleged failure to describe the universe of possible aesthetic outcomes

rather than the health-related risks.[5]

"[W]hen a plaintiff alleges that the attending physician incurred in malpractice for failing to inform of the incidental risks of the treatment administered said plaintiff must prove—in keeping with the general principles of negligence—that the lack of adequate information was the proximate cause of the damage." *Cruz Aviles v. Bella Vista Hosp., Inc.*, 112 F.Supp.2d 200, 202 (D.P.R. 2000)(quoting *Rodriguez Crespo v. Hernandez*, 121 D.P.R. 639, 665 (1988)).

On the record before me, I cannot determine that there is

---

5 During a Daubert hearing held on March 12, 2018, plaintiff tried to develop another theory regarding informed consent. She argued that Dr. Nadal had performed a partial abdominoplasty rather than a full abdominoplasty and that she had only agreed to the full abdominoplasty. Therefore, she concludes that Dr. Nadal did not obtain her informed consent to perform "a different operation," namely, the partial abdominoplasty. This theory, however, was not fully discussed in the Motion for Summary Judgment, where plaintiff only mentioned in a single sentence that "Dr. Nadal did not act prudently in giving enough information to the patient in regard to the original abdominoplasty; and actually performed a different operation for which he did not obtain the informed consent from Plaintiff." Docket No. 93-7 at pg. 6. There is no explanation in plaintiff's convoluted analysis as to what "different operation" she is alluding to.

a casual nexus between the alleged lack of informed consent and Ms. Laureano's alleged damages. Moreover, there are substantial controversies of material fact as to whether Dr. Nadal disclosed the probabilities of success of the procedure. The consent form for the original operation, which plaintiff signed on June 26, 2012, specifically states that the results of the operation are not guaranteed, and lists a number of negative outcomes that may result. *See* Docket No. 93-2, pgs. 3-7. Therefore, controversy abounds as to whether the two-belly-buttons-effect that plaintiff describes is a contemplated outcome.

Accordingly, summary judgment is denied.

**(iii)    Abandonment**

Ms. Laureano's last argument in favor of summary judgment is that Dr. Nadal abandoned her when he cancelled the scar revision and re-positioning surgery scheduled for June of 2013. Plaintiff, however, has not convinced the Court that a reasonable factfinder would undoubtedly find that Dr. Nadal did not act reasonably when he asked Ms. Laureano to

sign a waiver prior to the operation, and then cancelled it when she refused to sign.

Ms. Laureano has scarcely developed her abandonment theory. She cited no case law or legal sources to support the proposition that a doctor's refusal to conduct a corrective plastic surgery after the patient failed to sign a waiver amounts to patient abandonment. In our research, the issue of medical abandonment arises in the context of a patient that is left unattended by her doctor during a medical procedure. *See Perez Torres v. Bladuell Ramos*, 120 D.P.R. 295, 324 (1988)(finding that an ob/gyn who left a patient in labor in the nurses' care to go back home did not abandon the patient); *Riley v. Rodríguez De Pacheco*, 119 D.P.R. 762, 794-95 (1987)(holding that a doctor who had a "brief intervention" with the patient and "did not intubate her" aggravated the damages).

Our research did not turn up a single case where abandonment occurred under a factual scenario that resembles the one in the present action. Furthermore, the

circumstances that led up to the surgery's cancellation would require a jury to weigh the witnesses' credibility, a task which the Court cannot undertake at the summary judgment stage.

Thus, Ms. Laureano has failed to make the case for summary judgment in her favor.

**V. Conclusion**

For the reasons discussed herein, plaintiff's Motion for Summary Judgment at Docket No. 93 is denied.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of March, 2018.

S/ SILVIA CARREÑO-COLL

UNITED STATES MAGISTRATE JUDGE